No. 13-1438

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

*Jamie Meyers*

**Appellant**

*v.*

*Michael Lamer*

**Appellee**

_____

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

_____

### Opening Brief of Appellant

_____


**PAUL D. BEKMAN**
**EMILY C. MALARKEY**
**SALSBURY, CLEMENTS, BEKMAN,**
**    MARDER & ADKINS, LLC**
**300 W. Pratt Street, Suite 450**
**Baltimore, MD 21201**
**(410) 539-6633**
*Attorneys for Appellant*

# TABLE OF CONTENTS

Table of Authorities ........................................................................ iv

Jurisdictional Statement ................................................................. 1

Issues Presented For Review........................................................... 1

Statement of the Case .................................................................... 2

Statement of the Facts ................................................................... 2

Summary of the Argument ............................................................. 8

Argument....................................................................................... 9

    I.    STANDARD OF REVIEW ...................................................... 9

    II.    AS A WORKER ON THE ROADWAY, ASSUMPTION OF THE
        RISK DOES NOT APPLY TO MR. MEYERS ........................... 10

    III.    EVEN IF ASSUMPTION OF THE RISK DOES APPLY, MR. MEYERS
        DID NOT ASSUME THE PRECISE RISK THAT CAUSED HIS INJURY .. 11

        A.    Guiding Legal Principles........................................ 11

        B.    A Dispute Of Fact Exists About Whether Mr. Meyers Had
            Actual Knowledge Of The Danger ........................ 14

        C.    Mr. Meyers Did Not Assume The Risk That Mr. Hatfield
            Would Abandon His Duties As Lookout............................ 15

        D.    Mr. Meyers Did Not Assume The Risk That Mr. Lamer
            Would Drive Underneath His Bucket in Blatant Disregard
            For His Safety ................................................... 16

    IV.    MR. MEYERS WAS NOT CONTRIBUTORILY NEGLIGENT
        AS A MATTER OF LAW .................................................. 21

        A.    Guiding Legal Principles........................................ 21

**B.    Mr. Balgowan's Expert Testimony Generated A Dispute Of Material Fact** ............................................................ **24**

**C.    The Inferences To Be Drawn From The Undisputed Facts Generated A Jury Question** ..................................... **26**

**D.    Even Assuming Mr. Meyers Was Contributorily Negligent, Summary Judgment Was Not Appropriate Because Mr. Lamer Had The Last Clear Chance To Avoid The Collision** ..................................................................... **29**

**Conclusion** .............................................................................. **31**

**Request for Oral Argument** ..................................................... **32**

**Certificate of Compliance** ....................................................... **33**

**Certificate of Service** ............................................................... **34**

# TABLE OF AUTHORITIES

## Cases

*American Powerlifting Ass'n. v. Cotillo,* 934 A.2d 27 (Md. 2007) ............ 12, 13, 17

*Balt. Neighborhoods, Inc. v. Rommell Builders, Inc.,* 3 F. Supp. 2d 661 (D. Md. 1998) ..................................................................................... 10

*Balt. & O. R.R. Co. v. Leasure,* 69 A.2d 248 (Md. 1949) ...................................... 30

*Braswell v. Burrus,* 284 A.2d 41 (Md. Ct. Spec. App. 1971) ................................ 23

*Bull S.S. Lines v. Fisher,* 77 A.2d 142 (Md. 1950) ......................................... 13, 20

*Campbell v. Baltimore Gas & Elec. Co.,* 619 A.2d 213 (Md. Ct. Spec. App. 1993) ..................................................................................................... 27

*Campfield v. Crowther,* 249 A.2d 168 (Md. 1969) .............................................. 22

*Clayborne v. Mueller,* 284 A.2d 24 (Md. Ct. Spec. App. 1971) ..................... 10, 23

*Cohen v. Rubin,* 460 A.2d 1046 (Md. Ct. Spec. App. 1983) ........................... 28, 30

*Coleman v. Soccer Association of Columbia,* 41 A.3d 570 (Md. 2012) ................ 21

*Eastern Contractors v. Seifert,* 169 A.2d 430 (Md. 1961) ................................... 22

*Faith v. Keefer,* 736 A.2d 422 (Md. Ct. Spec. App. 1999) .............................. 23, 24

*Fed. Laboratories, Inc. v. Barringer Research Ltd.,* 696 F.2d 271 (3d Cir. 1982) ............................................................................................ 25, 26

*Heddig v. Pearson,* 173 P.2d 382 (Cal. Dist. Ct. App. 1946) ............................... 10

*Hilton Quarries v. Hall,* 158 A. 19 (Md. 1932). ............................................. 19, 20

*Imbraguglio v. Great Atlantic & Pacific Tea Co.,* 747 A.2d 662 (Md. 2000) . 13, 20

*Jones v. Hedges,* 12 P.2d 111 (Cal. Dist. Ct. App. 1932) ..................................... 10

*Kasten Const. Co. v. Evans,* 273 A.2d 90 (Md. 1971) ............................................ 25

*Miller v. Michalek,* 281 A.2d 117 (Md. Ct. Spec. App. 1971) ............. 14, 21, 22, 24

*Moodie v. Santoni,* 441 A.2d 323 (Md. 1982) ........................................................ 22

*Morrison v. Nissan Co., Ltd.,* 601 F.2d 139 (4th Cir. 1979) .................................. 10

*Overstreet v. Kentucky Cent. Life Ins. Co.,* 950 F.2d 931 (4th Cir. 1991) .............. 9

*Poole v. Coakley & Williams Const., Inc.,* 31 A.3d 212 (Md. 2011) ... 12, 13, 14, 22

*Provenz v. Miller,* 102 F.3d 1478 (9th Cir. 1996) .................................................. 26

*Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282 (4th Cir. 1987) ................... 9

*Ritter v. Portera,* 474 A.2d 556 (Md. Ct. Spec. App. 1984) ........................... 29, 30

*Roe v. Doe,* 28 F.2d 404 (4th Cir. 1994) ................................................................. 9

*Schroyer v. McNeal,* 592 A.2d 1119 (Md. 1991) .................................................. 12

*Schutz v. Breeback,* 178 A.2d 889 (Md. 1962) ...................................................... 23

*Stinchcomb v. Schoener,* 983 F.2d 1057, 1992 WL 389210 (4th Cir. 1993) .......... 18

*Watson v. Drew,* 197 So. 2d 53 (Fla. Dist. Ct. App. 1967) .................................... 10

*Webster v. Offshore Food Service, Inc.,* 434 F.2d 1191 (5th Cir. 1970) .............. 25

*Williamson Truck Lines v. Benjamin,* 222 A.2d 375
(Md. 1966) ........................................................ 13, 18, 19, 22, 23, 24, 28

*Willis v. Ford,* -- A.3d -- , No. 256, Sept. Term. 2012, 2013 WL 1859036
(Md. Ct. Spec. App. May 3, 2013) ....................................................... 28

## Statutes and Rules

Fed. R. Civ. Pro. 56 ................................................................................................. 9

## Other Authorities

MARYLAND PATTERN JURY INSTRUCTIONS (CIVIL) 19:14 ........................................ 29

RESTATEMENT (SECOND) OF TORTS § 496A (1965) .......................................... 12, 14

RESTATEMENT (SECOND) OF TORTS § 496B (1965) ................................................. 10

RESTATEMENT (SECOND) OF TORTS § 496C (1965) ................................................. 18

RESTATEMENT (SECOND) OF TORTS § 496D (1965) ................................................. 14

T.C. Williams, *Liability for injury by vehicle to construction or maintenance worker in street or highway,* 5 A.L.R. 2d 757 (1949) ........................................... 23

W. Page Keeton, et al., The Law of Torts, § 68 at 485, 490 (5th ed. 1984)........... 18

## JURISDICTIONAL STATEMENT

This appeal stems from the grant of a motion for summary judgment under Federal Rule of Civil Procedure 56. Jurisdiction in the District Court existed under 28 U.S.C. § 1332 given the parties' diversity of citizenship. On March 29, 2013, Appellant noted an appeal from the District Court's final judgment, which disposed of all of Appellant's claims. This Court accordingly has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

I.  **DID JAMIE MEYERS ASSUME THE RISK AS A MATTER OF LAW BY WORKING IN A BOOM BUCKET OVER AN OPEN TRAVEL LANE TO REPAIR A TRAFFIC LIGHT IN THE COURSE OF HIS EMPLOYMENT?**

II.  **WAS JAMIE MEYERS CONTRIBUTORILY NEGLIGENT AS MATTER OF LAW IN WORKING IN A BOOM BUCKET OVER AN OPEN TRAVEL LANE TO REPAIR A TRAFFIC LIGHT IN THE COURSE OF HIS EMPLOYMENT?**

## STATEMENT OF THE CASE

On February 16, 2009, Jamie Meyers suffered catastrophic injuries when the trailer of a tractor-trailer collided with a "boom bucket" in which he was working over the roadway to repair a traffic signal in St. Mary's County, Maryland.

Mr. Meyers sued Michael Lamer, the driver of the tractor-trailer, and his employer, Carroll County Foods, LLC, in the U.S. District Court for the District of Maryland. After the parties conducted discovery, they cross-moved for summary judgment. The District Court granted Mr. Lamer and Carroll County Food's motion on the grounds that Mr. Meyers both assumed the risk and was contributorily negligent as a matter of law.

Mr. Meyers timely noted the instant appeal.

## STATEMENT OF THE FACTS

### Mr. Meyers's Injury

On February 16, 2009, Jamie Meyers was working as a laborer for Rommel Engineering, which contracts with the State of Maryland to perform work on traffic signals and streetlights. Mr. Meyers's work assignment that day was to replace the traffic signals at the intersection of Maryland Route 5 (Point Lookout Road) and Maryland Route 249 (Piney Point Road) with more modern LED traffic signals. J.A. 65-66, 223. Mr. Meyers was accompanied to the work site by his foreman, Eric Hatfield. J.A. 54. They drove two different vehicles to the job site – an F350

truck and a "bucket" truck that held a boom that would raise a bucket above the roadway to allow a worker to reach the traffic signals. J.A. 69, 71.

Before performing any work on the traffic signals, under Mr. Hatfield's instruction, Mr. Meyers and Mr. Hatfield set up the area surrounding the intersection in accordance with the plan devised by Rommel's superintendent, Dan McMunn. J.A. 72-73, 107, 297, 519. They placed four "road work ahead" signs on each side of Point Lookout Road to alert approaching traffic; there were signs in each direction in the shoulder at one-and-a-half miles, one mile, a half mile, and finally, a "dog leg" sign just before the intersection.[1] J.A. 80-82, 292-93. Orange cones were placed on the line separating the travel lane from the shoulder starting over 100 yards before the intersection. J.A. 75-76, 230, 290. Additionally, on the rear of Mr. Hatfield's F350 truck, which was parked on the northbound side of road in the shoulder, were a blinking panel light, strobe lights, and flashers. J.A. 76-77, 84, 231. The bucket truck, which was parked just north of the F350 in the shoulder, also was equipped with blinking strobe lights and flashers. J.A. 70, 71-72, 84.

Mr. Meyers's assigned job was to ascend in the boom bucket to change the traffic signals, which were hanging over the open lanes of traffic. J.A. 84. Mr.

---

[1] A "dog leg" sign does not contain words, but rather, contains a straight line and a bent line to indicate a lane closure. J.A. 82.

3

Hatfield was the designated "groundsman" whose job it was to look out for approaching traffic, especially when Mr. Meyers had to turn his back against it. J.A. 85-86, 298, 337. The two had worked together for years and Mr. Meyers trusted Mr. Hatfield. J.A. 62, 91.

Mr. Meyers had only been up in the bucket for a few minutes and had removed one traffic light over the right lane of the two-lane Point Lookout Road when he told Mr. Hatfield that he had to turn against traffic to hang the replacement. J.A. 89. Mr. Hatfield acknowledged hearing Mr. Meyers and responded, "no problem. I got you." J.A. 89-90, 111. Just seconds later, and without any warning from Mr. Hatfield (who had turned his back against traffic), the bucket containing Mr. Meyers was struck by the trailer of a tractor-trailer being driven northbound in the right travel lane of Point Lookout Road by Michael Lamer, an employee of Carroll County Foods, LLC. J.A. 90, 93. Mr. Hatfield later testified that he was not looking at traffic because he (erroneously) thought that Mr. Meyers's bucket was high enough to avoid being struck by a tractor-trailer. J.A. 86, 235.

Mr. Lamer, who had been taking to his wife on his cell phone while driving up the road, admitted that, although he did <u>not</u> see the "road work ahead" warning signs or cones as he approached, he <u>did</u> see the bucket and knew Mr. Meyers was in it. He thought, however, that his trailer was low enough to clear the bucket

without needing to change lanes.  J.A. 113 ("he said, 'oh, 'cause I thought I could clear you"), 204, 300, 329, 333, 405 ("in my estimation, I believe that [the bucket] was higher than my trailer"), 406-07.  Mr. Lamer did not sound his horn to warn Mr. Meyers that he was approaching the intersection.  J.A. 108, 329.

After impact, Mr. Lamer "locked his brakes up and they were smoking." J.A. 109.  His truck slid through the intersection, leaving skid marks for approximately 150 yards.  *Id.*  Mr. Hatfield, who last remembers seeing clear road for half a mile before he turned away from traffic, was under the impression that Mr. Lamer was speeding.  J.A. 299, 395-98.

Upon impact, Mr. Meyers was ejected from the boom bucket.  J.A. 97. Although his safety harness caught him from landing on the ground and left him dangling over the roadway, he nevertheless suffered serious injuries to his ankle, back and knee.  J.A. 97-99, 224-25.

### The Expert Testimony

Both parties retained expert witnesses to render opinions about the propriety of the work site set-up and the cause of the collision.  According to Mr. Meyers's expert witness, Richard Balgowan, a civil engineer, the set-up of the intersection with warning signs and the usage of Mr. Hatfield as a groundsman were in accordance with the standard of care in the industry. Mr. Balgowan testified that

the standard of care did <u>not</u> require a lane closure under the circumstances.[2]   J.A.

329, 423-26, 429-30.  Mr. Balgowan concluded that Mr. Hatfield was negligent for

not keeping a proper lookout on behalf of Mr. Meyers, and that Mr. Lamer was

negligent for driving while on a cell phone, failing to activate his horn or warn Mr.

Meyers of his approach, and colliding with what was plainly in front of him.  J.A.

329.  He further concluded that Mr. Meyers was <u>not</u> negligent because he was

focused on his work-related task and could not keep a lookout for his own safety at

the same time.  *Id.*

Mr. Lamer's expert witness, Robert Miller, Jr., a certified accident

reconstructionist, opined that the travel lane underneath the signal should have

been closed, but conceded that Mr. Meyers did not play a role in determining how

to set up the intersection.  J.A. 519-20.  He further conceded that Mr. Hatfield

"failed to act as the eyes for Mr. Meyers when he had his back toward oncoming

traffic," at a time when he was "doing other work and he may not be able to pay

full-time attention to approaching traffic."[3]  J.A. 337-38; 520.  Mr. Miller admitted

---

[2] Although there is some dispute about the accuracy of his testimony, Leon
Bromley, the President of Rommel, also testified that the Maryland State Highway
Administration and state police found the work zone to be safe and proper.  J.A.
427; 515.

[3] Although not an expert retained by either party, Rudy McCumber, the
safety director for Rommel Engineering, authored a statement after the accident in
which he opined that the collision was "totally preventable" because "Mr. Hatfield,
as a groundsman, should have been watching for tall vehicles."  J.A. 463.

at deposition that Mr. Lamer's decision to drive under the boom bucket was an "incorrect" one.  J.A. 335.

## Procedural History

At the close of discovery, the parties cross-moved for summary judgment. Mr. Meyers contended that there was no dispute of fact that Mr. Lamer acted negligently when he consciously decided to proceed through the intersection in the same lane, even though he observed Mr. Meyers above it in the bucket truck.  J.A. 237-263.  Despite expert testimony that the work site was set up in accordance with the standard of care in the industry, Mr. Lamer countered that Mr. Meyers either assumed the risk or was contributorily negligent as a matter of law by performing repair work over an open lane of traffic.  J.A. 11-26; 341-381.

The District Court agreed with Mr. Lamer.  J.A. 530-39.  Curiously, although the Court apparently believed that there was *no* dispute of material fact on the issues of assumption of the risk and contributory negligence, it denied Mr. Meyers's cross-motion for summary judgment on the grounds that there *were* material disputes of fact surrounding "the observance of warning signs [by Mr. Lamer], Mr. Lamer's cell phone use, the speed of Mr. Lamer's tractor-trailer, his use of the tractor-trailer's horn, Mr. Lamer's ability to avoid the bucket or change lanes, and Mr. Lamer's assessment of clearances."  J.A. 539.

## SUMMARY OF THE ARGUMENT

The District Court erred in determining that Mr. Meyers assumed the risk as a matter of law because, under Maryland law, the doctrine of assumption of the risk does not apply to workers performing employment-related tasks in the roadway. Even assuming the doctrine does apply, however, Mr. Meyers did not assume the risk that his designated lookout would turn his back on traffic at the same time a tractor-trailer driver decided to gamble on whether his rig would fit underneath Mr. Meyers's bucket. At the very least, the trier of facts could draw this conclusion.

The District Court also improperly concluded that Mr. Meyers was contributorily negligent as a matter of law. Mr. Meyers presented expert testimony that the work site was set up in accordance with the standard of care in the industry – evidence from which a jury could conclude that Mr. Meyers acted reasonably. Additionally, jurors considering the facts and inferences to be drawn therefrom in the light most favorable to Mr. Meyers certainly could conclude that it was not negligent for Mr. Meyers to rely on his "groundsman" to serve as his eyes and ears while he necessarily had to turn away from traffic, and that the true proximate cause of the accident was Mr. Lamer's decision to attempt to drive underneath a bucket he admitted he saw. Indeed, the District Court plainly admitted in its Memorandum Opinion that numerous factual disputes are at play in this case,

precluding summary judgment on the issue of Mr. Lamer's negligence. The same holds true on the issue of Mr. Meyers's contributory negligence.

Finally, even if a jury found that Mr. Meyers was contributorily negligent, the undisputed evidence establishes that Mr. Lamer had the last clear chance to avoid the collision, rendering summary judgment against Mr. Meyers inappropriate.

## **ARGUMENT**

### I.   STANDARD OF REVIEW

This Court must review *de novo* the District Court's entry of summary judgment. *See Roe v. Doe,* 28 F.2d 404, 406 (4th Cir. 1994). Summary judgment is appropriate if the pleadings, depositions and other documents submitted by the parties establish that there is no genuine dispute as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Id.*; FED. R. CIV. P. 56. While the movant bears the burden of proving that he is entitled to summary judgment, the Court is required to draw all inferences in favor of the non-moving party. It must only grant summary judgment if, after doing so, no reasonable jury could return a verdict in its favor. *See Overstreet v. Kentucky Cent. Life Ins. Co.,* 950 F.2d 931, 937 (4th Cir. 1991); *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir. 1987).

Indeed, the district courts have noted that the standard for summary judgment in this Circuit is "strict, and that summary judgment is inappropriate even if merely the inferences to be drawn from the facts are in dispute." *Balt. Neighborhoods, Inc. v. Rommell Builders, Inc.,* 3 F. Supp. 2d 661, 663 (D. Md. 1998) (emphasis added) (citing *Morrison v. Nissan Co., Ltd.,* 601 F.2d 139, 141 (4th Cir. 1979)).

## II. AS A WORKER ON THE ROADWAY, ASSUMPTION OF THE RISK DOES NOT APPLY TO MR. MEYERS

The primary reason why Mr. Lamer was not entitled to summary judgment on the issue of assumption of the risk is because that defense simply does not apply to workers engaged in work-related tasks in the roadway. Maryland courts have long held that assumption of the risk "**is not applicable to those persons such as workers in the street,** traffic directors or police officers exercising traffic control and regulation enforcement if they are in the course of the normal pursuit of their duties."[4] *Clayborne v. Mueller,* 284 A.2d 24, 29 (Md. Ct. Spec. App. 1971), *aff'd* 291 A.2d 443 (Md. 1972). Such a rule only makes sense; otherwise, it would be difficult to find persons willing to perform roadwork for a living. *Cf.* RESTATEMENT (SECOND) OF TORTS § 496B, cmt. f (1965) (explaining that an

---

[4] Other jurisdictions abide by the same rule. *See, e.g., Jones v. Hedges,* 12 P.2d 111 (Cal. Dist. Ct. App. 1932); *Heddig v. Pearson,* 173 P.2d 382 (Cal. Dist. Ct. App. 1946); *Watson v. Drew,* 197 So. 2d 53 (Fla. Dist. Ct. App. 1967).

employer rarely can assert assumption of the risk as a defense against an employee because of the "disparity in bargaining power" and "economic necessity which forces the employee to accept the employer's terms").

Because Mr. Meyers was a road worker engaged in work-related responsibilities at the time of the collision, the defense of assumption of the risk cannot be asserted against him, and the District Court should not have granted the motion for summary judgment.

## III.  EVEN IF ASSUMPTION OF THE RISK DOES APPLY, MR. MEYERS DID NOT ASSUME THE PRECISE RISK THAT CAUSED HIS INJURY

Even assuming that the doctrine of assumption of the risk applies to this case, the District Court still erred in determining that Mr. Meyers assumed the risk as a matter of law by working over an open travel lane.  The application of assumption of the risk depends on the plaintiff's subjective belief about the danger he is encountering.  In this case, Mr. Meyers quite reasonably believed that he was not encountering any risk because a lookout was watching out for his safety. Additionally, he did not assume the risk that a negligent driver would careen into his bucket with impunity.

### A.    Guiding Legal Principles

A necessary starting place is a review of legal principles governing the defense of assumption of the risk.  In this case, it is critical to note that there are four distinct types of assumption of the risk: three types of "express" assumption of

11

the risk, and "implied" assumption of the risk.  Express assumption of the risk lies (1) where the plaintiff assents to the defendant's conduct, (2) enters into a special relationship with the defendant that absolves him of liability, or (3) proceeds to voluntarily encounter a danger created by the defendant.  *See* RESTATEMENT (SECOND) OF TORTS § 496A, cmt. c (1965); *Schroyer v. McNeal,* 592 A.2d 1119, 1123, n. 5 (Md. 1991).  <u>Implied</u> assumption of the risk – the type at issue in this case – occurs where "the plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable."[5]  *See id.* at cmt. c, d.  *See also* RESTATEMENT (SECOND) OF TORTS § 496A, cmt. h (1965).

No matter the type, assumption of the risk is a defense to negligence because it constitutes "voluntary acquiescence" and therefore an "abandonment of the right to complain if an accident occurs."  *Poole v. Coakley & Williams Const., Inc.,* 31 A.3d 212, 224 (Md. 2011) (quotation marks and citations omitted). It is premised on the notion that the plaintiff's "willingness to take a chance" supercedes any duty of care the defendant owes.  *Id.* at 223.  *See also American Powerlifting Ass'n. v.*

---

[5] With respect to implied assumption of the risk, the authorities suggest that it is tantamount to contributory negligence, and there is ordinarily "no difference which the defense is called."  *See* RESTATEMENT (SECOND) OF TORTS § 496A, cmt. d (1965).  *See also Poole v. Coakley & Williams Const., Inc.,* 31 A.3d 212, 224 (Md. 2011) (observing that the same conduct may amount to both assumption of the risk and contributory negligence); *Schroyer,* 592 A.2d at 1121 ("Assumption of the risk and contributory negligence are closely related and often overlapping defenses.").

*Cotillo,* 934 A.2d 27, 36 (Md. 2007) ("The very nature of an assumption of the risk defense is that by virtue of the plaintiff's voluntary actions, any duty the defendant owed the plaintiff to act reasonably for the plaintiff's safety is superceded by the plaintiff's willingness to take a chance.") (Quotation marks and citation omitted.).

In order to be entitled to judgment on the issue of assumption of the risk, the defendant must prove that there is no dispute of material fact that the plaintiff (1) had knowledge of the risk of danger, (2) appreciated the precise risk, and (3) voluntarily confronted the precise risk. *See Poole*, 31 A.3d at 224. *See also Imbraguglio v. Great Atlantic & Pacific Tea Co.,* 747 A.2d 662, 672 (Md. 2000) (defendant bears the burden of proving the elements of the defense). The risk must be "naturally incidental" to the activity in which the plaintiff is engaged. *Williamson Truck Lines v. Benjamin,* 222 A.2d 375, 383 (Md. 1966). *See also American Powerlifting Ass'n,* 934 A.2d at 36 (plaintiff "only assumes those risks that are inherent in the activity in which he is engaged. … [I]f by some action of the defendant, an unusual danger arises, that is not so assumed"). In the employment context, "every risk is not necessarily assumed by one who works in a dangerous place or at a dangerous occupation." *Id.* (Quoting *Bull S.S. Lines v. Fisher,* 77 A.2d 142, 146 (Md. 1950)).

Of paramount importance is the fact that a <u>subjective</u> standard is applied to determine whether the plaintiff assumed the risk.[6]  In other words, "the *particular* plaintiff must have *actual* knowledge of the risk before she can be found to have assumed it."  *Poole,* 31 A.3d at 224-26; *see also* 230 ("For a plaintiff to have knowledge of the risk, as a matter of law, there must be undisputed evidence that he or she had actual knowledge of the risk prior to its encounter.").  *See also* RESTATEMENT (SECOND) OF TORTS § 496A, cmt. d; § 496D cmt. c (1965).

Finally, the law is clear that in only the most obvious of cases should the question of assumption of the risk be decided as a matter of law.  *See Miller v. Michalek,* 281 A.2d 117, 121 (Md. Ct. Spec. App. 1971) ("It is settled that the question of assumption of risk is usually for the jury."); *Poole,* 31 A.2d at 226, 229 ("[b]ecause the focus is on what the plaintiff actually knew, understood and appreciated the issue is ordinarily left to the jury to resolve") (reversing summary judgment on assumption of the risk); RESTATEMENT (SECOND) OF TORTS § 496D, cmt. e (1965) (same).

**B.    A Dispute Of Fact Exists About Whether Mr. Meyers Had Actual Knowledge Of The Danger**

Applying these legal principles to this case, the first reason why it cannot be said that Mr. Meyers assumed the risk as a matter of law is because there is a

---

[6] The District Court erroneously stated that the standard is objective.  J.A. 534.

dispute of fact regarding whether he had actual knowledge at the moment he turned his back on traffic that his bucket would interfere with a passing tractor-trailer. Mr. Meyers was asked this precise question and stated that he simply did not know whether his bucket was high enough to avoid being struck by a tractor-trailer. J.A. 89, 188-89. His focus was on performing his job, and he relied on Mr. Hatfield to look out for his safety when he could not.

In rejecting this testimony and concluding that Mr. Meyers *had* to have known that his bucket was in a place of danger, the District Court improperly resolved a question of fact. The fact-finder could accept Mr. Meyers's testimony and conclude that that he did <u>not</u> have actual knowledge about the height of his bucket, and therefore he did not assume the risk.

### C. Mr. Meyers Did Not Assume The Risk That Mr. Hatfield Would Abandon His Duties As Lookout

Related to Mr. Meyers's knowledge regarding the height of his bucket is the *undisputed* evidence compelling the conclusion that he did not "voluntarily confront" the risk that he may be struck by a tractor-trailer because his safety "equipment" – his lookout – would fail. It is undisputed that: (1) Mr. Hatfield was supposed to be the "lookout" for traffic coming in Mr. Meyers's direction, (2) Mr. Meyers believed Mr. Hatfield was looking out for him when turned his back against traffic, and (3) Mr. Hatfield was <u>not</u> looking at traffic at the time Mr. Lamer's tractor trailer rig approached the intersection.

A jury evaluating this undisputed evidence could determine that Mr. Meyers did not subjectively assume the risk that his designated lookout would turn his back on the road and fail to warn him of an approaching tractor-trailer.  Unlike someone who observes the presence of ice on the sidewalk and decides to traverse across it anyway, the evidence here does not support a finding that, as a matter of law, Mr. Meyers decided to "take his chances" in disregard for his own safety. Although he was aware that the road below him was open to traffic, he ascended in the bucket subjectively believing that any risk inherent in doing so was mitigated by the presence of a lookout in the road below – someone he had worked with for years and trusted.  Mr. Meyers was not obligated under the law to assume that his lookout would abandon his duties.

### D.    Mr. Meyers Did Not Assume The Risk That Mr. Lamer Would Drive Underneath His Bucket in Blatant Disregard For His Safety

The undisputed evidence also establishes that Mr. Lamer (1) was talking on his cell phone while driving down the roadway and did not see the "road work ahead" warning signs, (2) saw Mr. Meyers in the bucket above the roadway, (3) proceeded underneath of the bucket under the mistaken belief that he could clear it, and (4) did not change lanes or warn Mr. Meyers of his approach.  A jury evaluating this undisputed evidence also could conclude that Mr. Meyers did not ascend in the bucket "taking his chances" that a distracted tractor-trailer driver

would see the bucket and take *his* chances – without changing lanes or warning Mr. Meyers – that his rig would clear.

In rejecting this argument, the District Court erroneously relied on the belief that the conduct of a third party (here, both Mr. Hatfield and Mr. Lamer) is irrelevant to the question of whether Mr. Meyers assumed the risk.   J.A. 535. While it is true that, in many cases, the plaintiff's assumption of the risk operates as consent to the defendant's negligent conduct, that rule is not universal.   The defendant's negligent conduct is only irrelevant in cases of <u>express</u> assumption of the risk.[7]   When it comes to <u>implied</u> assumption of the risk – the type at issue in this case – the legal scholars and this Court have recognized that "even one who knowingly proceeds into danger does not necessarily relieve another of all duty to

---

[7] The District Court relied on the Maryland Court of Appeals's decision in *American Powerlifting Association, supra,* a case of express assumption of the risk that involved a weightlifter who was injured when the bar he lifted fell on his jaw. In concluding that he assumed the risk as a matter of law, the Court rejected the plaintiff's contention that the spotters for the competition were negligently trained, explaining that, "*[d]ue to the nature of sports injuries*, a participant assumes the risk that other participants may be negligent."  934 A.2d at 35 (emphasis added). The Court did not hold that, in all cases, the conduct of the defendant is irrelevant, and in fact, acknowledged that "every risk is not necessarily assumed by one who works in a dangerous place… <u>if by some action of the defendant, an unusual danger arises, that is not so assumed</u>."  *Id.* at 36 (emphasis added). Furthermore, it relied largely on the fact that the "immediate cause" of the injury was the plaintiff's own failure to lift the bar properly, while here, the "immediate cause" of Mr. Meyers's injury was Mr. Lamer's decision to drive underneath his bucket.

act with reasonable care." *Stinchcomb v. Schoener,* 983 F.2d 1057, 1992 WL 389210 at * 3 (4th Cir. 1993).[8]

The example given in the legal treatises is that of a jaywalker who crosses the street in the middle of the block and is struck by a negligently driven vehicle; it is well-settled that he does not consent to the defendant's negligent driving. *See id. See also* RESTATEMENT (SECOND) OF TORTS § 496C, cmt. h (1965); W. Page Keeton, et al., <u>The Law of Torts</u>, § 68 at 485, 490 (5th ed. 1984). In the *Stinchcomb* case, this Court therefore refused to find that a plaintiff walking in the middle of an open lane of traffic had assumed the risk as a matter of law, explaining that a contrary ruling "would permit a driver, without due care and regard, to run over pedestrians in the street with impunity." 1992 WL 389210 at * 3.

The same principle applies here. In ascending in plain sight over the roadway in his bucket to perform his work-related responsibilities, Mr. Meyers did not absolve his co-worker or drivers approaching the intersection of any duty of care towards him. Almost directly on point is *Williamson Truck Lines v. Benjamin, supra.* There, the hood of the plaintiff's vehicle suddenly blew open while he was driving down the roadway. He stopped in the roadway, exited the vehicle, watched from the shoulder for several minutes while other vehicles passed

---

[8] Although this is an unpublished disposition, Appellant was unable to locate another Fourth Circuit case directly discussing this well-recognized legal principle.

his safely, and then stepped in front of his vehicle to repair his hood.  It was at that point that his vehicle (and he standing in front of it) was struck by a tractor-trailer. The evidence showed that the tractor-trailer driver failed to reduce his speed, failed to change lanes, and failed to sound his horn in warning.

In affirming a jury verdict for the plaintiff, the Maryland Court of Appeals held that he had not assumed the risk as a matter of law by leaving his vehicle in the roadway where it may be struck.  While admitting that the plaintiff's vehicle was in a "place of danger," the Court explained that the plaintiff "had no reason to anticipate the negligence of [the defendant] in operating the tractor-trailer in failing to … pass safely as [other drivers] had already done."  222 A.2d at 381, 383.  This case is virtually identical.

Also instructive is *Hilton Quarries v. Hall,* 158 A. 19 (Md. 1932).  There, the plaintiff was injured at a quarry while standing on the cab of his truck when the operator of a boom swung a derrick of stone directly into him, instead of into the bed of the truck.  The defendant presented evidence that the plaintiff was expected to stand on the ground to direct the placement of stone, and in fact had been warned *not* to stand on the cab.  The Court of Appeals specifically disagreed with the defendant's argument that the plaintiff assumed the risk as a matter of law by choosing the more dangerous of two positions.  Explaining that the critical inquiry involves whether the plaintiff should have anticipated the precise danger that

19

caused his injury, the Court determined that a jury could find that, while the plaintiff may have assumed some risk by standing on top of his truck, he had no reason to anticipate that the boom operator would see him, and negligently strike him with the derrick anyway. *Id.* at 23-24.

Similarly, in *Bull S.S. Line v. Fisher, supra*, a steam ship worker was injured when a co-worker swung a boom carrying a load of lumber into him. The defendant argued that the worker assumed the risks inherent in his dangerous occupation. The Court of Appeals rejected this argument, explaining:

> We find … that every risk is not necessarily assumed by one who works in a dangerous place or at a dangerous occupation. He assumes only those risks which might reasonably be expected to exist, and, **if by some action of the defendant, an unusual danger arises, that is not so assumed. Where there is a dispute whether the risk is assumed or not, that question is usually left to the jury.**

77 A.2d at 146 (Emphasis added.). *See also Imbraguglio,* 747 A.2d at 677 (warehouse worker did not assume the risk of working on elevated pallet with no railings instead of one with railings; under the facts, a jury could find that the plaintiff did not "consent[] to relieve [the defendant] of any alleged obligation for the worker's safety[.]").

These well-reasoned holdings compel the conclusion that, although Mr. Meyers knowingly encountered a potentially dangerous situation, he did not assume the risk either that his lookout would fail him or that a tractor-trailer driver

would act with impunity and drive into his bucket.  The order granting summary

judgment must be reversed.

## IV.   MR. MEYERS WAS NOT CONTRIBUTORILY NEGLIGENT AS A MATTER OF LAW

The District Court also erroneously concluded that Mr. Meyers was

contributorily negligent as a matter of law because he failed to avail himself of

alternative safety options.  In so deciding, the Court ignored expert testimony that

Mr. Meyers did not control the way the intersection was set up, and more

importantly, that it was set up in accordance with the standard of care in the

industry.  The District Court also inappropriately usurped the role of the jury in

drawing inferences from the facts to determine that Mr. Meyers's conduct was

unreasonable under the circumstances.[9]

### A.    Guiding Legal Principles

In order to avail himself of the defense of contributory negligence, the

defendant must prove that the plaintiff committed an act that is "prominent,

decisive, and one about which ordinary minds would not differ in declaring it to be

---

[9] If this Court decides that Mr. Meyers did not assume the risk as a matter of law but is inclined to find that he was contributorily negligent, he submits that the Court should defer issuing a decision until the Maryland Court of Appeals publishes its opinion in *Coleman v. Soccer Association of Columbia,* 41 A.3d 570 (Md. 2012), which was argued on September 10, 2012.  The Court granted certiorari in that case to decide whether it should "ameliorate or repudiate the doctrine of contributory negligence and replace it with a comparative negligence regime."

negligence." *Miller,* 281 A.2d at 119 (quotation marks and citation omitted). *See also Moodie v. Santoni,* 441 A.2d 323, 325 (Md. 1982) (defendant bears the burden of proving the elements of the defense). Even if the act "turns out to have been an error of judgment, this of itself does not make the act negligent if an ordinary prudent person would have made what proves to have been the same error." *Id.* (Quotation marks and citation omitted.)

Unlike assumption of the risk, in which the plaintiff consents to his own injury, contributory negligence is a defense to liability because the plaintiff's actions are considered the proximate cause of that injury. *See Poole,* 31 A.2d at 224. Also unlike assumption of the risk, contributory negligence is judged based on an <u>objective</u> standard as to what a person of ordinary prudence would do under the same circumstances. *Id.* at 225. In order to act reasonably, the plaintiff "is not bound to anticipate every possible injury which might occur and every possible eventuality." *Campfield v. Crowther,* 249 A.2d 168, 172 (Md. 1969). Of paramount importance in this case, as with assumption of the risk, <u>the law does not require one to anticipate the negligence of another</u>. *See Williamson,* 222 A.2d at 383; *Eastern Contractors v. Seifert,* 169 A.2d 430, 434 (Md. 1961).

Also as with assumption of the risk, special principles apply to workers engaged in tasks on the roadway. It is well-established that, because they cannot be as alert as those who are driving, individuals whose jobs require them to work

in the roadway deserve a "special status" when it comes to judging the reasonableness of their conduct. *Clayborne,* 284 A.2d at 28; *Braswell v. Burrus,* 284 A.2d 41 (Md. Ct. Spec. App. 1971); *Schutz v. Breeback,* 178 A.2d 889, 891 (Md. 1962). The Maryland Court of Appeals has explained that an individual working on the roadway:

> [I]s not bound to anticipate negligence on the part of the operators of approaching vehicles, and, in the absence of circumstances which would afford notice to the contrary, he may rely to some extent on the belief that the operators of motor vehicles will exercise ordinary care and will observe the rules of the road so as to avoid injuring him. Accordingly, **he need not continuously watch for approaching vehicles where there nature of the work in which he is engaged requires his attention.**

*Williamson*, 222 A.2d at 383 (quotation marks and citation omitted) (emphasis added). *See also* T.C. Williams, *Liability for injury by vehicle to construction or maintenance worker in street or highway,* 5 A.L.R. 2d 757 (1949).

Finally, just like assumption of the risk, except in extremely straightforward cases, the issue of contributory negligence must be submitted to the jury:

> A case may not be taken from a jury on the ground of contributory negligence unless the evidence demonstrates some prominent and decisive act which directly contributed to the incident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds.

*Faith v. Keefer,* 736 A.2d 422, 443 (Md. Ct. Spec. App. 1999) (reversing grant of summary judgment on issue of contributory negligence) (quotation marks and citations omitted). *See also Williamson,* 222 A.2d at 379 ("The absence or presence of contributory negligence is generally a question for the jury."); *Miller,* 281 A.2d at 120 (even if "more than one inference can be drawn from facts in respect of the issue of contributory negligence, it must be submitted to the jury"). Even in cases where the negligence "seems clear," if the facts may support a finding that the plaintiff's conduct "had its basis in a reasonable expectation," the question is one for the jury. *Id*.

### B.   Mr. Balgowan's Expert Testimony Generated A Dispute Of Material Fact

As explained in part above, the facts of this case are largely undisputed. Indeed, perhaps the <u>only</u> dispute of fact (besides whether Mr. Meyers knew that his bucket was low enough to be struck) is whether it was appropriate to perform the repair work without shutting down Point Lookout Road to traffic.   On that question, both parties presented expert witness testimony (that curiously went ignored by the District Court).

Mr. Meyers offered expert testimony from a civil engineer, Richard Balgowan, that the set-up of the intersection, including the decision <u>not</u> to close or

block the travel lane, was in accordance with the standard of care in the industry.[10]

J.A. 328-329; 423-25, 429-30.  Mr. Balgowan further testified that the use of Mr.

Hatfield as a "groundsman" was appropriate and in accordance with industry

standards.  J.A. 425-26.

Mr. Balgowan's expert testimony more than generated a jury question as to

whether the set-up of the intersection, and therefore Mr. Meyers's conduct in

working over the roadway, was reasonable.[11]  *See Webster v. Offshore Food*

*Service, Inc.,* 434 F.2d 1191, 1193 (5th Cir. 1970) ("summary judgment is often

inappropriate where the evidence bearing on crucial issues of fact is in the form of

expert opinion testimony"); *Fed. Laboratories, Inc. v. Barringer Research Ltd.,*

---

[10] Mr. Lamer argued before the District Court that it should not consider the report of Mr. Balgowan in deciding the summary judgment motion because it was not submitted under affidavit.  Although Federal Rule of Civil Procedure 56(e)(2) gives a district court the discretion to consider unsworn evidence as undisputed, the Court's memorandum opinion is silent on the matter (and likewise does not mention the testimony of Mr. Lamer's expert).  Regardless of whether this Court decides to consider Mr. Balgowan's report, Mr. Balgowan's sworn deposition testimony is also a part of the appellate record and amply supports Mr. Meyers's position.  *See* J.A. 423-26; 429-30.

[11] Even without expert testimony, evidence of how Mr. Meyers and Hatfield typically set up similar intersections would be sufficient to generate a jury question.  *See Kasten Const. Co. v. Evans,* 273 A.2d 90, 93 (Md. 1971) (electrical worker was not contributorily negligent as a matter of law by failing to notice before ascending a pole that its base was not rooted into the ground properly; a jury could determine that checking for the depth of the pole prior to starting work was not a normal procedure, and that the plaintiff "did what any experienced lineman would ordinarily have done").

696 F.2d 271, 274-75 (3d Cir. 1982) ("A court may not … resolve disputed and relevant factual issues on conflicting affidavits of qualified experts[.]") (Quotation marks and citation omitted.); *Provenz v. Miller,* 102 F.3d 1478, 1490 (9th Cir. 1996) ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case.") (Quotation marks and citation omitted.).

### C.    The Inferences To Be Drawn From The Undisputed Facts Generated A Jury Question

Even without M. Balgowan's testimony, the inferences to be drawn from the undisputed facts preclude summary judgment against Mr. Meyers.  The undisputed facts establish that Mr. Hatfield and Meyers went to great lengths to warn approaching traffic that road work was being performed at the intersection, setting up signs as far as a mile-and-a-half from the intersection, in addition to blocking the shoulder with cones and using flashing lights on their vehicles.  It is undisputed that Mr. Lamer did <u>not</u> see these warning signs.  It is further undisputed that he <u>did</u> see Mr. Meyers in the bucket above the roadway, and did misestimate that his rig could fit below the bucket.  It is undisputed that Mr. Hatfield failed his responsibly to serve as a lookout.

These undisputed facts generate many jury questions, such as whether the warning signs were appropriate to alert approaching traffic, whether Mr. Meyers reasonably relied on his superiors to determine the appropriate set up, and whether

it was reasonable to rely on Mr. Hatfield to serve as his "lookout" while he turned his back from traffic to do his job.[12]   It was also up to the jury to determine whether Mr. Meyers reasonably believed that any traffic approaching the intersection would either slow down or change lanes, or at least sound a warning of its approach.

Curiously, the District Court admitted that there *were* disputes of material fact surrounding "the observance of warning signs [by Mr. Lamer], Mr. Lamer's cell phone use, the speed of Mr. Lamer's tractor-trailer, his use of the tractor-trailer's horn, Mr. Lamer's ability to avoid the bucket or change lanes, and Mr. Lamer's assessment of clearances."   J.A. 539.  If these disputes generate a jury question on the issue of Mr. Lamer's contribution to the accident, then so too do disputes related to the reasonableness of Mr. Meyers' conduct.  This is especially true given the special status Mr. Meyers enjoys as a road worker, and the law that he need not continuously watch for traffic while performing his job duties.

Persuasive are the numerous cases in which appellate courts have refused to find that plaintiffs injured in the middle of the roadway are contributorily negligent

---

[12] The District Court cited *Campbell v. Baltimore Gas & Elec. Co.,* 619 A.2d 213 (Md. Ct. Spec. App. 1993) for the proposition that Mr. Meyers could not rely on Mr. Hatfield to watch out for his safety.  That case, however, is very different. In *Campbell*, the plaintiff's supervisor inspected a work site and neglected to warn him of the presence of overhead power lines, which the court concluded were equally apparent to the plaintiff.  Here, Mr. Hatfield made affirmative assurances to Mr. Meyers that he would "watch his back," and it is undisputed that Mr. Meyers could not see approaching traffic while he performed his work duties.

as a matter of law.  Again, right on point is *Williamson,* the case discussed above in which the plaintiff parked his car in the roadway when the hood suddenly blew up. In addition to finding that the plaintiff did not assume the risk as a matter of law, the Court of Appeals also held that the issue of contributory negligence was a jury question. It explained that a jury could conclude from evidence that it was a clear night, that the plaintiff's lights were on, and that other cars and tractor-trailers had avoided his vehicle safely, that the plaintiff had acted reasonably under the circumstances.  *See* 222 A.2d at 381-82.  *See also Willis v. Ford,* -- A.3d -- , No. 256, Sept. Term. 2012, 2013 WL 1859036 (Md. Ct. Spec. App. May 3, 2013) (plaintiff who remained in a stalled vehicle on the roadway was not contributorily negligent as a matter of law; it was "incumbent on the trial judge to submit [the plaintiffs'] decision-making process to the judgment of the jurors"); *Cohen v. Rubin,* 460 A.2d 1046, 1051 (Md. Ct. Spec. App. 1983) (jaywalker who was killed by drunk driver going 75 to 80 miles per hour down Ocean Highway in Ocean City, Maryland was not contributorily negligent as a matter of law; it was up to the jury to balance the relative duties of the pedestrian and the driver, and was "not a situation where ordinary and reasonable minds may not differ").

Just like the plaintiffs in *Williamson, Willis* and *Cohen,* Mr. Meyers is entitled to have a jury evaluate the circumstances that confronted him on February 16, 2009 to determine whether his choice to rely on the safety warnings on the

roadway and the presence of his lookout, and to presume that vehicles driving up the roadway would take measures to avoid him, was reasonable.

> **D. Even Assuming Mr. Meyers Was Contributorily Negligent, Summary Judgment Was Not Appropriate Because Mr. Lamer Had The Last Clear Chance To Avoid The Collision**

Finally, even assuming Mr. Meyers did act unreasonably as a matter of law, the evidence in this case supports a finding that Mr. Lamer had the last clear chance to avoid the collision, precluding summary judgment.

Under the last clear chance doctrine, "a plaintiff who was contributorily negligent may nevertheless recover if the plaintiff was in a dangerous situation and thereafter the defendant had a fresh opportunity of which defendant was aware to avoid injury to the plaintiff and failed to do so." MARYLAND PATTERN JURY INSTRUCTIONS (CIVIL) 19:14. "The rationale behind the concept of last clear chance is that if the defendant has the last clear opportunity to avoid the harm, the plaintiff's negligence is not a proximate cause of the result." *Ritter v. Portera,* 474 A.2d 556, 558 (Md. Ct. Spec. App. 1984) (quotation marks and citation omitted). In other words, the doctrine applies when the defendant "discovered the plaintiff's peril in time, by the exercise of ordinary care, to have avoided the accident." *Id.* at 559 (quotation marks and citation omitted).

The undisputed evidence in this case is that Mr. Lamer had the last clear chance to avoid the collision. Mr. Lamer was first negligent by talking on his cell

phone while driving, having a personal conversation with his wife that was distracting (and there is evidence to suggest that he was also speeding). He then, however, had a fresh opportunity to avoid the collision, as he admits that he saw Mr. Meyers in the bucket, yet did not change lanes, sound his horn in warning, or take any other measure to avoid striking it. Instead, he proceeded through the intersection simply *assuming* that he could clear.

Under these facts, a jury could hold him responsible under the last clear chance doctrine. In fact, that is exactly what the court held in *Cohen, supra,* the case involving a jaywalker who was struck in the highway by a car traveling at 75-80 miles per hour:

> … Cohen was made aware of the dangerous position of the [plaintiff] on the highway at a time when he could have availed himself of the opportunity to slow down and avoid the consequences of his original negligence due to driving at a highly excessive rate of speed.

460 A.2d at 1051-52 (evidence sufficient to submit to jury the question of whether defendant driver had the last clear chance to avoid collision with pedestrian who failed to cross at designated crosswalk). *See also Balt. & O. R.R. Co. v. Leasure,* 69 A.2d 248 (Md. 1949) (evidence that railroad watchman had the last clear chance to observe plaintiff's position of peril was sufficient to submit question to jury); *Ritter,* 474 A.2d at 558 (reversing directed verdict based on evidence of last clear chance).

## <u>CONCLUSION</u>

In light of the foregoing, Mr. Meyers respectfully requests that this Court reverse the decision of the District Court, and remand this case for a trial on the merits.

_____
Paul D. Bekman
Emily C. Malarkey
SALSBURY, CLEMENTS, BEKMAN,
    MARDER & ADKINS LLC
300 W. Pratt St., Suite 450
Baltimore, MD 21201
(410) 539-6633
*Attorneys for Appellant*

## <u>REQUEST FOR ORAL ARGUMENT</u>

Appellant hereby requests oral argument pursuant to Local Rule 34(a).

_____
Paul D. Bekman
Emily C. Malarkey
SALSBURY, CLEMENTS, BEKMAN,
    MARDER & ADKINS LLC
300 W. Pratt St., Suite 450
Baltimore, MD 21201
(410) 539-6633
*Attorneys for Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## No. 13-1438

### *Jamie Meyers*

### *v.*

### *Michael Lamer*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 7,670 (less than 14,000) words of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)B)(iii), as verified by Microsoft Word for Mac 2011.

2.      I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2011 in size 14 Times New Roman type.

_____                              _____
Date                                                       Emily C. Malarkey
                                                              *Attorney for Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20rd day of June, 2013, I served Appellant's Opening Brief upon the Appellees by electronic filing and by mailing a copy, first class, postage pre-paid, to:

_____
Emily C. Malarkey
*Attorney for Appellant*